FILED
2011 Mar-23 PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KARI PEARSON WILLIAMS, | ] |
| Plaintiff, | ] |
| vs. | ] 1:10-CV-00146-LSC |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Kari Pearson Williams, appeals from the decision of the Commissioner of the Social Security Administration denying her applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB") and period of disability. Ms. Williams has timely pursued and exhausted her administrative remedies and the decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Williams was thirty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education. (Tr.

776, 780)  Her past work experiences include employment as a "runner" at a "mini-casino," a convenience store clerk, and as a fast food worker.  *Id.* at 780-82.  In her applications for SSI and DIB, Ms. Williams alleged disability beginning December 15, 2003, due to insulin dependent diabetes mellitus with the complications of peripheral neuropathy, chronic chest pain, chronic spinal pains, benign tachycardia, and an immune deficiency. *Id.* at 27, 29-33.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends

on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Williams met the nondisability requirements for a period of disability and DIB and was insured through the date of his decision (Tr. at 29.) He further determined that Ms. Williams had not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* According to the ALJ, Plaintiff's "insulin dependent diabetes mellitus with early mild peripheral neuropathy, immunoglobulin deficiency syndrome, and obesity" are considered "severe" based on the requirements set forth in the regulations *Id*. However, he found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. *Id.* at 30. The ALJ did not find Ms. Williams's allegations to be totally credible, and he determined that she has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. 404.1567(b) and 417.967(b), subject to the following limitations:

> The claimant has the residual functioning capacity to ... sit eight hours of an eight-hour workday. However, the claimant would require a sit/stand option and would be precluded from the operation of foot or leg controls, and could not work around unprotected heights or hazardous machinery. The claimant would be limited to jobs in which contact with the general public and co-workers would be brief, infrequent and casual.

(Tr. at 30-31.)

The ALJ accepted the vocational expert's testimony that, given Ms. Williams's RFC, she is unable to perform any of her past relevant work. *Id*. at 32. The ALJ determined that Ms. Williams is a "younger individual," and has a "limited education," as those terms are defined by the regulations. *Id*. After considering her "age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Specifically, representative occupations such as "general office clerk/general clerk," "machine tender/inspector" and "dispatcher" were found to be compatible with Ms. Williams's RFC, each with between 1,000 to 7,000 jobs regionally available. *Id*. at 33.

The ALJ concluded his findings by stating that Plaintiff "has been capable of making a successful adjustment to other work that exists in

significant numbers in the national economy," and that therefore she "was not under a disability, as defined in the Social Security Act, from December 15, 2003 through the date of this decision." *Id*. at 33.

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id*.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Ms. Williams alleges that the ALJ's decision is not based on substantial evidence for two reasons. She contends, first, that additional evidence was presented to the ALJ after the evidentiary hearing, and thus was not properly considered by the medical expert when giving his testimony as to whether Ms. Williams's medical profile meets or is equivalent to one of the Commissioner's "Listings." Second, she contends that upon receiving the

entirety of the medical evidence after the testimony of the medical expert and vocational expert, the ALJ failed to develop the record in light of the additional evidence.

    A.    Subsequently-Submitted Medical Evidence.

Plaintiff contends that the ALJ's decision is not based on substantial evidence because documents submitted after the evidentiary hearing could affect the opinion testimony of the medical expert, Dr. James Anderson. Specifically, Plaintiff alleges that the subsequently-submitted evidence could affect Dr. Anderson's testimony regarding whether the severity of Ms. Williams's impairments would satisfy presumptive disability requirements under the Commissioner's "Listings." (Doc. 8 at 5-6; Tr. at 789-790; and *see* 20 C.F.R. § 404, subpt. P, app. 1). In his testimony, Dr. Anderson stated that Ms. Williams's pathology would be consistent with an RFC for light work (Tr. at 790). Plaintiff appeals whether Dr. Anderson should have reviewed the subsequently-submitted evidence before his testimony was considered by the ALJ and, alternatively, whether Ms. Williams's RFC is actually restricted to light work. (Doc. 8 at 7).

In issuing his opinion, the ALJ distinguished Ms. Williams's severe impairments from those deemed not to be severe. Those impairments that were found not to be severe were Ms. Williams's chest pain, back pain, and benign tachycardia. On the other hand, the ALJ determined that some of Ms. Williams's impairments were severe. Ms. Williams' obesity, diabetes mellitus, and immune deficiency disorder were those that the ALJ deemed severe.

Even though the ALJ found a number of impairments, he also found that the medical record "does not fully support the claimant's complaints." (Tr. at 29.) Despite Ms. Williams's complaints of limitations imposed by diabetes, a blood disorder causing an immune deficiency, back pain, and diabetic neuropathy, "the majority of [her] objective tests revealed mild, minimal, early negative, and/or normal results." *Id.* at 29-30. Specifically, the findings arising out of the non-severe impairments are supported by substantial evidence. For example, films of Plaintiff's chest from early 2005 demonstrated clear lungs with no acute disease. *Id.* at 31 and *see* Tr. at 123, 124. Echocardiograms and cardiac ultrasound examinations all returned results within the normal limits and the tachycardia was effectively

controlled with the proper medication.  *Id*. at 31-32, and *see, e.g., id*. at 152, 347.  Finally, tests arising out of Plaintiff's complaints of back pain did not indicate any significant abnormalities.[1]  *Id*. at 32.   Thus, substantial evidence supports the ALJ's findings that Plaintiff's chest pain, back pain, and benign tachycardia, are not severe.

Moreover, the ALJ's findings regarding Plaintiff's severe impairments are similarly supported by substantial evidence.  Listing 9.08 provides that an impairment renders a claimant disabled where there is diabetes mellitus "with neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements," or gait and station disorganization caused by paresis or paralysis or tremor.  *See* 20 C.F.R. § 404, subpt. P, app. 1.  In the present case, substantial objective evidence supports the ALJ's decision that Ms. Williams's diabetes mellitus does not meet this listing.  While she

---

[1] Tests arising out of Plaintiff's back pain included x-rays of the lumbar spine (March 18, 2004); MRI scans of the lumbar and thoracic spines (April 22, 2004); radiographs of the lumbar and cervical spines (December 15, 2006); and films taken of the cervical and thoracic spines (July 27, 2007).  Only the April, 2004 MRI scans revealed a minimal L5-S1 disc bulge.  *See* Tr. at 32; *and see* Tr. at 343, 311-13, 622-23, and 678-79.

did have "some decreased gross sensation" in her ankles and feet in 2004 (Tr. at 140), her extremities nearly always tested normally (*See*, e.g., Tr. at 147, 160, 163, and 306-10.) In fact, the ALJ indicated that during the period of disability, Ms. Williams's symptoms were consistent with *early* peripheral neuropathy. (Tr. at 31.) Therefore, there is no objective evidence that undermines the ALJ's finding that Plaintiff's diabetes mellitus with peripheral neuropathy rises to the level to meet Listing 9.08.

Additionally, where non-examining medical expert opinions are supported by the medical evidence of record provided by examining physicians, the non-examining medical expert opinion may be given great weight, even in light of subsequently-submitted evidence. *See Poellnitz v. Astrue*, 349 F. App'x 500, 503 (11th Cir. 2009) (holding, in relevant part, that where expert opinion testimony is supported by the specific findings of a treating physician of limitations due to impairments, the expert testimony may constitute substantial evidence to support the ALJ's determination). In the present case, the expert testimony similarly considered Plaintiff's

limitations in formulating na RFC.[2] (Tr. at 794-97.) Therefore, the opinion testimony was properly afforded substantial weight in this case.

Because substantial evidence supports the findings of the ALJ as to the severity of Ms. Williams' impairments, this Court's review of the ALJ's decision turns to the evidence submitted to the ALJ after the evidentiary hearing. Plaintiff submitted eight additional medical exhibits to the ALJ after the evidentiary hearing and fifteen additional medical exhibits to the Appeals Council. Those exhibits consist of medical records submitted from several treating physicians, including Dr. Allen Yielding and Dr. Michael McKinney, and consist of medical records detailing Ms. Williams's treatment between January 2005 and February 2007. (*See*, *e.g.* Tr. at 345-63, and 382-516.) In sum, Plaintiff contends that the medical evidence relied upon by Dr. Anderson and the vocational expert, and thus the ALJ, was substantially lacking, as 86 pages of medical information were submitted after the

---

[2] In explaining Ms. Williams's RFC, the ALJ stated that even though Ms. Williams's ability to perform all of the requirements of light work was restricted by her impairments, those restrictions did not prevent Ms. Williams from performing the requirements of certain light work occupations constituting over 9,500 jobs in Alabama. (Tr. at 33.) Thus, like in *Poellnitz*, the ALJ formulated the RFC with consideration of the medical expert testimony that was consistent with limitations evident in the records of Ms. Williams's treating physicians.

evidentiary hearing (Doc. 8 at 6), and 109 pages of "new and additional medical records" were submitted to the Appeals Council.[3] *Id*. at 9.

Specifically, Plaintiff argues that, where there is evidence submitted subsequent to the testimony of the medical and vocational experts, that new evidence must be considered by the medical and vocational experts before their opinions may be persuasive to the ALJ. However, that argument is misplaced. *See Poellnitz* at 503-04.

Plaintiff relies heavily on *Wilson v. Barnhart* for the assertion that expert testimony is only valuable when it considers all of the plaintiff's impairments. 284 F.3d 1219, 1227 (11th Cir. 2002). *Wilson*, however, in no way discusses subsequently-submitted evidence. Rather, in *Wilson*, the expert testimony was based on substantial evidence at the time of the hearing. In the present case, expert testimony was similarly supported by substantial evidence. Moreover, the court in *Wilson* indicated that "the record is devoid of any objective medical evidence to support [plaintiff's]

---

[3] The "new and additional medical records" submitted to the Appeals Council can be found in the record at pages 521-770

subjective assertions of pain and extreme limitations." *Id.* at 1227. The ALJ ruled similarly here. (Tr. at 31.)

Plaintiff also makes the unfounded argument that implicit in the *Wilson* rule is that expert testimony must be based on *all the evidence of record*. (Doc. 8 at 7-8.) That argument, however, is unpersuasive. First, the rule quoted by the court in *Wilson* only applies where the expert testimony lacks consideration all of a claimant's *impairments*, not where new evidence simply lends further credence to the impairments of record. Here, the new evidence expounds upon the impairments already considered by both the vocational and medical experts. Therefore, the expert testimony *was* given based on all of the Plaintiff's impairments. Additionally, to require that expert testimony be based on *all of the evidence of record* would yield absurd results in cases of subsequently-submitted evidence. In such cases, under the rule proposed by Plaintiff, a claimant would need only submit a single piece of evidence after the experts have given their testimony in order to render the expert testimony invalid. That is why the Guidelines only require further testimony if the evidence of record is *inadequate* for the ALJ to render an opinion. *See* 20

C.F.R. §§ 404.1512(e), 416.912(e).  Because the evidence of record was adequate for the ALJ to render an opinion in this case in light of evidence submitted after the expert testimony, no further testimony is required.

Moreover, here the subsequently-submitted evidence was either duplicative or bolstered the testimony of the medical expert and was cited by the ALJ's decision. (*See* Tr. at 32 *citing* Tr. at 622-23 and 678-79.) Therefore, the testimony of the medical and vocational experts in this case was adequate to render an opinion in light of the medical record.  For instance, in his testimony, the medical expert (Dr. James Anderson) discussed the trial therapy for Ms. Williams's immune disorder.  He indicated that, based on the records dated January 18, 2005,  Ms. Williams "has an unclear indication for this and unclear whether she's responding or not to it."  (Tr. at 790; and *see* Tr. at 228.)  In the subsequently-submitted evidence, Dr. Yielding, an examining physician, said that in February 2007, Ms. Williams had "done well over the past six months" and that the treatment caused "marked improvement." *Id*. at 379.  And, because of the improvements, Dr. Yielding indicated that Ms. Williams's infections and

hospitalizations had been reduced "significantly" and that she was responding to the treatment "excellently." *Id*.

The subsequently-submitted evidence also supports the testimony of the medical expert and thus the decision of the ALJ regarding Ms. Williams's other severe impairments: obesity and diabetes mellitus with neuropathy. First, regarding her obesity, the new evidence actually indicates that Ms. Williams's weight did not change substantially. (*Cf*. Tr. at 488 *with* Tr. at 728 indicating a seven-pound fluctuation over 3 years.) Similarly, there is no evidence to undermine the ALJ's findings regarding Plaintiff's peripheral neuropathy under Listing 9.08.

Where the additional evidence (whether presented after the expert testimony or presented to the AC after the ALJ hearing) does not provide a basis for disturbing the ALJ's decision, there is no need to remand for review of that additional evidence. *See Poellnitz*, 349 F. App'x 500, 503-04. That is the case here, and this court sees no need to remand for review of the additional evidence. Moreover, Plaintiff's alternative argument similarly fails to warrant remand as the medical record as a whole supports the ALJ's decision and is consistent with the expert opinion testimony recommending

an RFC for restricted light work. (*See Poellnitz* 349 F. App'x at 503; *see also* Tr. at 33 *and supra* p. 12, note 2.)

B. Failure to Develop the Record.

Plaintiff also contends that the ALJ failed to adequately develop the record because the ALJ did not hold a supplemental hearing to allow the medical expert to testify regarding the subsequently-submitted evidence discussed above. Administrative hearings under the Social Security Act are not adversarial proceedings. *Richardson v. Perales*, 402 U.S. 389 (1971). An ALJ does have a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Moreover, Social Security regulations provide that "when the evidence [the ALJ] receives from [the] treating physician or psychologist or *other medical source* is *inadequate* for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added). Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

In *Wilson*, the court held that the ALJ was not obligated to seek "additional expert medical testimony" because "the record, which included the opinions of several physicians including [those] who treated [the plaintiff], was sufficient for a decision and additional expert testimony was unnecessary." *Id.* at 1278. In that regard, *Wilson* is very similar to the case *sub judice*. The ALJ relied upon the testimony of the medical expert, Dr. James Anderson, largely because it was supported by the evidence of record, which included several of Ms. Williams's treating physicians.[4] The new evidence submitted did not uncover any additional impairment nor did it present any indication that further testimony from the medical expert was necessary. That is, the evidence the ALJ received was adequate to determine whether the Plaintiff was disabled. In taking into account the medical record as well as medical expert testimony, the ALJ "scrupulously and conscientiously" probed into, inquired of, and explored for all the relevant facts. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

Additionally, the Eleventh Circuit requires that the claimant must make "a showing of prejudice before [the court] will remand for further

---

[4] See, *supra*, pt. A at p. 12.

development of the record." *Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010). Here, plaintiff has not alleged nor made a showing of the prejudice required by *Robinson.* In fact, Plaintiff concedes that the ALJ did an excellent job of developing the record, with the exception of the lack of a supplemental hearing. Because that supplemental hearing was not necessary, there is no showing of prejudice that necessitates remand for failure to develop the record.

IV.  Conclusion.

Upon a thorough review of the administrative record, and after considering all of Ms. Williams's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. A separate order will be entered.

Done this 23rd day of March 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671